NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PAUL EDWARD SCOTT, *Appellant*.

No. 1 CA-CR 24-0569
FILED 8-12-2026

Appeal from the Superior Court in Maricopa County
No. CR2022-112690-001
The Honorable Kevin B. Wein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

Paul Edward Scott, Eloy
*Appellant*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

---

**F U R U Y A**, Judge:

¶1 Paul Edward Scott appeals his conviction and sentence for first-degree murder. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1105(A)(1). Scott's counsel has filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating counsel has searched the record on appeal and found no arguable question of law that is not frivolous. Counsel asks us to search the record for fundamental error. *See State v. Clark*, 196 Ariz. 530, 537 ¶ 30 (App. 1999) (stating we review the entire record for reversible error). We allowed Scott to file a supplemental brief *in propria persona*, which he did, raising issues that we address. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 We view the facts in a light most favorable to sustaining the verdict and resolve all reasonable inferences against Scott. *State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998).

¶3 On the evening of April 8, 2022, Scott, a transient, fell asleep after drinking beer in his car in a parking lot behind a convenience store gas station. A young woman ("Dana")[1] woke Scott to make sure he was okay after noticing Scott's feet hanging out of the car. The two began drinking beer and chatting in Scott's car when Peter—with whom Dana lived and had children—appeared and began yelling at and punching Dana to force her out of the vehicle. Peter threatened to shoot Scott, though Scott never saw a gun. Scott grabbed a utility knife from his dashboard, causing Peter to back away. Scott then returned to his car and attempted to run down Peter, who ran off.

¶4 Scott dropped Dana off at the convenience store and went back to the parking lot. Peter returned and attacked Scott and his car with

---

[1] We use pseudonyms to protect the victims' privacy. *See* Ariz. R. Sup. Ct. 111(i).

rocks and a long pole before leaving. Several minutes later, officers arrived in response to two witnesses' 911 calls. While talking with Scott, the officers received a dispatch call regarding another incident in which a man was seen choking a woman ("the separate choking incident"). The officers responded to that call, believing it was related to Scott's incident, but found only Dana hiding in a bush.

¶5 Meanwhile, Scott moved his car back behind the convenience store, drank more beer, and fell asleep. Shortly thereafter, Peter again approached Scott's car and spoke with him. A few minutes later, Peter stepped back from the car and Scott began driving away. But after noticing Peter make some "motion with his hands," Scott circled back twice. On the second time, Scott rapidly accelerated and hit Peter, sending him airborne. The impact killed Peter and caused Scott to crash, rendering his car inoperable.

¶6 After about fifteen minutes, Scott went into the convenience store and asked the manager to call the police because he had "killed somebody." He then returned to his car, drank more beer, covered Peter with a blanket, and waited for the police. He later told the police he had not wanted to kill Peter, but Peter had "talked too much s--t," "beat up a woman," and was "an evil man" who "probably needed to die." Scott claimed Peter's actions triggered his post-traumatic stress disorder but also admitted he was not afraid for his life when he hit Peter and that he could have just driven away.

¶7 Ten days later, a grand jury indicted Scott on one count of first-degree murder, a Class 1 dangerous felony. Scott noticed several defenses, including crime prevention, self-defense, defense of others, defense of property, and justification.

¶8 In December 2023, the State filed a motion in limine to preclude the 911 calls and witnesses' testimonies that suggested Peter and Dana were involved in the separate choking incident. The State argued such evidence was inadmissible because Scott did not witness the choking incident and was unaware of it before killing Peter. Scott countered the evidence was admissible "other act" evidence under Arizona Rule of Evidence ("Rule") 404(b) and supported his self-defense argument. After a three-day evidentiary hearing, the court precluded evidence related to the choking incident but allowed Scott to re-urge the motion if the record developed at trial made the evidence admissible.

**¶9**          Scott's ten-day trial began in July 2024. During trial, Scott requested various jury instructions on self-defense, crime prevention, and defense of an occupied vehicle, citing multiple Arizona statutes and a California jury instruction. The court denied Scott's request for the occupied vehicle and California instructions but gave the requested self-defense and crime prevention instructions, as well as an instruction that Scott had no duty to retreat. The court also instructed the jury on the charged crime of first-degree premeditated murder and, at Scott's request, on the lesser-included offenses of second-degree murder and manslaughter.

**¶10**          The jury found Scott guilty of first-degree murder. In September, the court conducted a sentencing hearing in compliance with Scott's constitutional rights and Arizona Rule of Criminal Procedure 26. The court sentenced Scott to natural life in the Arizona Department of Corrections, *see* A.R.S. § 13-752(A), credited him with 903 days of presentence incarceration, and imposed a total of $44 in fines.

**¶11**          We have jurisdiction over Scott's timely appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. Sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

### I.          Alleged Error in Precluding Evidence

**¶12**          Scott argues the court erred by precluding evidence of the choking incident. Citing Federal Rules of Evidence 403 and 404[2]—apparently for the first time—he contends the precluded evidence is "other act" evidence that supports his self-defense argument. We disagree.

**¶13**          Prior acts of violence committed by a victim and known to a defendant at the time of an alleged crime are admissible if offered to prove the defendant had a reasonable belief he was in danger. *State v. Fish*, 222 Ariz. 109, 116 ¶ 18 (App. 2009); *see also State v. Taylor*, 169 Ariz. 121, 124 (1991) ("Arizona courts have long held that a murder defendant who defends on the basis of justification should be permitted to introduce evidence of specific acts of violence by the deceased if the defendant either observed the acts himself or was informed of the acts before the

---

[2]          Although Scott cites the analogous Federal Rules of Evidence in his supplemental brief, he makes no argument as to why we should apply those rules in favor of the Arizona Rules of Evidence or how such application would result in a different outcome, and we discern none.

homicide.”). And evidence of a victim's unknown prior act of violence may be admissible to prove the victim was the aggressor, though such evidence is limited to general reputation evidence under Rules 404(a)(2) and 405, which permit specific act evidence only when the victim's character is an essential element of the defense or on cross-examination. *Fish*, 222 Ariz. at 118 ¶ 28.

¶14 "In Arizona, a victim's character is not an essential element of self-defense[,]" consistent with interpretations of the Federal Rules of Evidence. *Id.* at 119 ¶ 29. Thus, under Rule 405, "a defendant may not introduce evidence of specific acts unknown to the defendant at the time of the alleged crime to show that the victim was the initial aggressor." *Id.* at 121 ¶ 35. Further, "evidence of specific violent acts by the [v]ictim is not admissible to prove a defendant's state of mind and reasonableness unless the defendant claiming self-defense knew of the specific acts" before the alleged crime. *Id.* at 121 ¶ 37.

¶15 In *Fish*, we held that "because of the nature of the record," a defendant might nonetheless introduce specific act evidence previously unknown to the defendant if that evidence would be used to corroborate the defendant's account of the crime. *Id.* at 124–25 ¶¶ 48–49. As explained in *Fish* and recognized by the superior court in this case, a defendant seeking to admit evidence of prior violent acts must still comply with Rule 404(b):

> To determine whether specific prior act evidence is admissible under Rule 404(b), a court must first determine whether the evidence is clear and convincing as to the conduct and that the person alleged to have committed it did so, although ultimately those facts are left to the jury to decide if the evidence is admitted. In addition, a trial court must also determine whether the evidence: (1) Is offered for a proper purpose under Rule 404(b); (2) Is relevant to prove that stated purpose; and (3) Has sufficient probative value as not to be substantially outweighed by undue prejudice under Rule 403.

*Id.* at 123 ¶ 43 (citation modified).

¶16 Here, the superior court found evidence of the alleged separate choking incident was "presently inadmissible" because Scott had shown no proper purpose for such evidence. But the court allowed Scott to "re-urge this motion during trial relying on the record developed during the presentation of evidence," provided that he also "address the other

admissibility factors including that there is clear and convincing evidence of the assault." But because Scott conceded at trial that Dana denied the separate choking incident occurred between her and Peter, Scott could not demonstrate by clear and convincing evidence that Peter choked Dana. Further, he did not re-urge the motion, much less attempt to address the additional admissibility factors recognized in *Fish*. Accordingly, the superior court did not err by precluding evidence of the separate choking incident.

## II.     Scott's Requested Instructions Regarding Use of Force in Defense of an Occupied Vehicle

**¶17**          Scott contends the court erred by denying his requests to instruct the jury pursuant to A.R.S. Sections 13-418 and -419 on the use of force in defense of an occupied vehicle and the presumption that the threat or use of physical force was immediately necessary under specified circumstances. We again find no error.

**¶18**          "A party is entitled to an instruction on any theory reasonably supported by the evidence." *State v. Almeida*, 238 Ariz. 77, 79 ¶ 9 (App. 2015) (quoting *State v. Rodriguez*, 192 Ariz. 58, 61 ¶ 16 (1998)). In making this assessment, courts ask "whether the evidence, viewed in the light most favorable to the proponent, supports giving the instruction." *Id.* (citing *State v. King*, 225 Ariz. 87, 90 ¶ 13 (2010)). Thus, the superior court does not weigh or resolve conflicting evidence but merely determines if the slightest evidence tends to show justification. *Id.* at 79–80 ¶ 9 (citation modified). "[W]e independently assess whether the evidence supported a justification instruction, because that is a question of law and involves no discretionary factual determination." *Id.* at 80 ¶ 9.

**¶19**          Section 13-418(A) outlines the justification defense of an occupied vehicle:

> [A] person is justified in . . . using . . . deadly physical force against another person if the person reasonably believes himself or another person to be in imminent peril of death or serious physical injury and the person against whom the . . . deadly physical force is . . . used was in the process of unlawfully or forcefully entering, or had unlawfully or forcefully entered, a[n] . . . occupied vehicle, or had removed or was attempting to remove another person against the other person's will from the . . . occupied vehicle.

¶20 Section 13-419 provides presumptions that may apply to a justification defense under several statutes, including A.R.S. Section 13-418:

> A. A person is presumed to reasonably believe that the . . . use of . . . deadly force is immediately necessary . . . if the person knows or has reason to believe that the person against whom . . . deadly force is . . . used is unlawfully or forcefully entering or has unlawfully or forcefully entered and is present in the person's . . . occupied vehicle.

> B. [A] person who is unlawfully or forcefully entering or who has unlawfully or forcefully entered and is present in a[n] . . . occupied vehicle is presumed to pose an imminent threat of unlawful deadly harm to any person who is in the . . . occupied vehicle.

A.R.S. § 13-419(A)–(B). Thus, Section 13-419's presumptions—that Scott was presumed to reasonably believe the use of deadly force was immediately necessary and that Peter posed an imminent threat of unlawful deadly harm to any person in Scott's vehicle—would apply if, at the time Scott chose to run down Peter, Scott knew or had reason to believe Peter was "unlawfully or forcefully entering" Scott's vehicle or had already done so and was present in the vehicle.

¶21 Here, the clear video evidence showed Peter walking a substantial distance behind Scott's moving car and the gap between them was widening before Scott chose to stop. Scott acknowledged he could have simply driven away but chose instead to make a U-turn, point his car at Peter, and "floor[] it." And even if Peter unlawfully or forcefully entered Scott's car during their initial encounter—when he attacked Dana and tried to pull her out of the car—he was not present in Scott's car when Scott decided to run him down. *See* A.R.S. § 13-419(A) (requiring aggressor to be "present in the person's . . . occupied vehicle"). Because no facts support a conclusion or belief that Peter unlawfully or forcefully entered Scott's vehicle and was present in the vehicle when Scott decided to run him down, Section 13-419's presumptions do not apply.

¶22 Moreover, no evidence supports the factual predicate for requiring an instruction under A.R.S. Section 13-418—that Scott could have "reasonably believe[d] himself or another person to be in imminent peril of

7

death or serious physical injury" at the time he decided to kill Peter.[3] At the time of the final incident, Dana was not in Scott's car, and no facts indicate she was anywhere near the parking lot. Thus, Scott could not have reasonably believed she was in imminent peril of death or serious physical injury from Peter. And as for Scott, he admitted never seeing a gun or other weapon, knew Peter no longer had the pole, and affirmed he was not afraid for his life when he decided to run over Peter. He also acknowledged he could have simply driven away rather than stop, circle back, and renew the dispute by running down Peter. Because no facts support that Scott could have reasonably believed he was in imminent peril of death or serious physical injury, the superior court did not err in declining to instruct the jury under A.R.S. Section 13-418.

**¶23**        Scott also contends the court erred by denying his proposed instructions based on an evaluation of his credibility. But Scott does not develop this argument or cite to supporting evidence in the record, and thus he has waived it. *See State v. Vargas*, 249 Ariz. 186, 191 ¶ 22 (2020) ("[I]f the appellant fails to properly develop an argument, the court may consider it abandoned and waived."). Further, we find no evidence in the record supporting this argument, and as previously discussed, there was no substantial evidence to support the requested instructions. *See King*, 225 Ariz. at 91 ¶ 17 (citing *State v. Lujan*, 136 Ariz. 102, 104 (1983) ("The privilege of self-defense is not available to one who is at fault in provoking an encounter or difficulty that results in a homicide." (citation modified))).

**¶24**        Finally, Scott cites *Newell v. State*, 49 So. 3d 66, 74–78 ¶¶ 22–34 (Miss. 2010), and its application of the "Castle Doctrine," ostensibly to argue he had no duty to retreat from Peter. *See also* A.R.S. § 13-418(B) ("A person has no duty to retreat before threatening or using physical force or deadly physical force pursuant to this section."). But the superior court instructed the jury as to the "no duty to retreat" rule regarding justification for self-defense and the use of force in crime prevention, and counsel for both the State and Scott argued its possible applicability to Scott's case. In his brief, Scott does not develop a cogent argument of error on this issue, let alone show fundamental error occurred. Accordingly, he has waived review of this issue. *See Vargas*, 249 Ariz. at 191 ¶ 22.

---

[3]        Scott questions at what distance an assailant presents an imminent threat, and he purports to cite statistics and military rules of engagement, which he did not introduce at trial. He cites no authority for inclusion of this purported "evidence" on appeal, and we find none.

### III.  Adequacy of the Superior Court's Final Jury Instructions

¶25        Scott argues the superior court's final instructions to the jury were inadequate and the court committed fundamental error by not instructing the jury "on numerous statutory definitions and expanded language of terms in regard to (self-defense/crime-prevention)."  He maintains the court should have provided "any instructions defining crimes which would have been helpful to the jury to determine an element of his defense."

¶26        The superior court has discretion over whether to give or refuse jury instructions. *State v. Brown*, 260 Ariz. 476, 480–81 ¶ 17 (2025). Because Scott did not raise this issue at trial, we review for fundamental error only. *State v. Henderson*, 210 Ariz. 561, 568 ¶ 22 (2005).

¶27        Scott fails to show he requested the additional instructions for which he now generally argues and provides little clarity on appeal as to what those instructions should have been. Rather, he quotes extensively from *State v. Fish*, where the defendant requested an instruction that listed the elements for the crimes of endangerment, threatening or intimidating, and aggravated assault and also defined "unlawful physical force" as including these crimes. 222 Ariz. at 126 ¶ 55. We concluded the court erred in denying the defendant's request because "we cannot assume that the jury was aware of laws on which it was not instructed." *Id.* at 129 ¶ 66.

¶28        But our decision in *Fish* was also based on the conclusion that there was evidence in the record supporting a claim of self-defense. *Id.* at 129–30 ¶¶ 65, 68. We cannot reach the same conclusion here. Justification defenses demand an immediate need to act. *See, e.g.*, A.R.S. §§ 13-404 (self-defense requires "a reasonable person would believe that physical force is immediately necessary to protect himself"); -405 (requiring "a reasonable person would believe that deadly physical force is immediately necessary to protect himself"); -406 (defense of a third person requires immediacy under §§ 13-404 or -405); -411 (crime prevention authorizes force only if "immediately necessary" to prevent the commission of a specifically identified offense). Here, no evidence was presented that Scott had an immediate need to act to protect himself, Dana, or any other third person, or to prevent a crime from being committed, when he chose to run down Peter. On the contrary, the evidence unequivocally showed that even if Peter could have been presumed to have initially posed an immediate threat when he approached a sleeping Scott in the parking lot, he no longer posed such a threat after he backed away from the car and Scott drove away. The video evidence and Scott's own statements make clear that, at

the time he was killed, Peter posed no immediate threat to Scott or anyone else. Thus, because there is no evidence in the record supporting an element of Scott's self-defense claim, we see no error in the court's decision to deny Scott's request.

## IV.    Additional Considerations

**¶29**        After reviewing the entire record for reversible error, we find none. *See Leon*, 104 Ariz. at 300; *Clark*, 196 Ariz. at 537 ¶ 30. The evidence presented at trial was substantial and supports Scott's conviction and sentence. So far as the record reveals, Scott was represented by counsel at all stages of the proceedings and had a chance to speak at sentencing. The sentence imposed was within statutory guidelines, and the proceedings complied with Scott's constitutional and statutory rights and the Arizona Rules of Criminal Procedure. We also note that Scott filed over seventy supplemental citations of legal authority, but none were availing or at all persuasive, and thus do not affect our decision.

**¶30**        Upon filing of this decision, defense counsel shall inform Scott of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). This court, on its own motion, grants Scott thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration. *See* Ariz. R. Crim. P. 31.3(a) (stating the appellate court may for good cause suspend any provision of Rule 31 and order proceedings as it directs); 31.20(c) (allowing fifteen days to move for reconsideration). Scott may petition the Arizona Supreme Court for review no later than thirty days after the date of this decision or, if he files a timely motion for reconsideration, no later than fifteen days after the motion is decided. *See* Ariz. R. Crim. P. 31.21(b)(2)(A).

## CONCLUSION

**¶31**        We affirm Scott's conviction and sentence.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**:        JT